RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 4/28/11
BY all

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAMES HOUSTON HICKS, <br> Plaintiff | CIVIL ACTION <br> SECTION "P" <br> 1:09-CV-01268 |
| VERSUS | |
| TIM WILKINSON, et al., <br> Defendants | JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff James Houston Hicks ("Hicks") on July 28, 2009 (Doc. 1) and amended on October 5, 2009 (Doc. 4) and January 11, 2010 (Doc. 13). The named defendants are Tim Wilkinson (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Dr. Alfonso Pacheco (a medical doctor formerly employed at WCC), Pat Thomas (medical director at WCC), and Corrections Corporation of America, L.L.C. ("CCA") (operator of WCC) and its insurer. Hicks contends that, while he was incarcerated at WCC in 2009, he was diagnosed with sleep apnea in February 2009 and prescribed a C-PAP breathing machine, which defendants have denied him. For relief, Hicks asks for injunctive relief and monetary damages.

Dr. Pacheco is no longer employed at WCC and was never served (Doc. 37). Accordingly, it will be recommended that the complaint

against Dr. Pacheco be dismissed without prejudice under Fed.R.Civ.P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

Wilkinson, Thomas, and CCA answered the complaint and requested a jury trial (Doc. 28). Defendants then filed a motion for summary judgment (Doc. 39) with documentary exhibits and a statement of undisputed facts. Hicks filed a statement of issues for trial (Doc. 41). Defendants' motion is now before the court for disposition.

## Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all

2

material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for

summary judgment. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

<u>No Serious Medical Need</u>

Defendants argue that Hicks does not require a C-PAP machine because he has only non-severe sleep apnea and the C-PAP machine was only a suggestion. Defendants contend that Dr. Pacheco, in consultation with his supervisor, Dr. Andreade, decided instead to prescribe an alternative treatment for Hicks' sleep apnea-weight loss.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997), citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a

4

physician has been negligent in diagnosing or treating a medical condition, <u>Estelle</u>, 97 S.Ct. at 291, or a disagreement about medical treatment, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. <u>Easter v. Powell</u>, 467 F.3d 459, 464 (5th Cir. 2006), citing <u>Domino v. Tex. Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. <u>Walker v. Butler</u>, 967 F.2d 176, 178 (5th Cir. 1992); <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

On February 5, 2009, Hicks underwent a sleep study at LSU Health Sciences Center in Shreveport with Dr. Douglas Moul to treat excessive snoring and daytime sleepiness (Doc. 1, Ex. C; Doc. 13, Ex. 2-A). The sleep study showed snoring and an apnea-hypopnea index of 6.3 with a respiratory disturbance index of 19 during the diagnostic portion of the study; Dr. Moul stated the index of 19 causes Hicks' snoring and excessive daytime sleepiness (Doc. 1, Ex. C). Hicks was diagnosed with "comparatively modest" obstructive sleep apnea (Doc. 13, Ex. 2-B). Hicks' overall sleep efficiency on

the diagnostic portion of the study was 98%, he had minimal findings indicating any difficulty with cardiac rhythm, he did not exhibit excessive leg movements, he had fairly consistent snoring, and his oxygen saturation was minimally impaired by the degree of respiratory compromise that was evident, with the lowest desaturation at approximately 90%-a relatively modest respiratory compromise (Doc. 13, Ex. 2-B). Dr. Moul stated that, at the index level of 19, the long-term medical consequences for Hicks were considered to be modest with respect to cardiovascular outcomes (Doc. 1, Ex. C). Dr. Moul recommended CPAP therapy with a prescription of 17 cm water pressure, using a Full Comfort mask, medium size, to treat and largely eliminate Hicks' snoring events (Doc. 1, Ex. C). A follow-up appointment one month after therapy was initiated was also recommended (Doc. 1, Ex. C).

On February 23, 2009, Dr. Pacheco and Dr. Andreade decided to try weight loss to treat Hicks's sleep apnea instead of ordering CPAP machine treatments for him (Doc. 13, Ex. 4). When Hicks arrived at WCC in April 2007, he was 5'5" tall and weighed 200 pounds (Doc. 39, p. 6/8).[1] On February 25, 2009, Dr. Pacheco noted that Hicks seemed to be agreeable to treating his sleep apnea through weight loss (via decreased calorie intake and increased exercise) (Doc. 13, Ex. 5).

---

[1] That is the only time Hicks' weight is noted in the record currently before the court.

However, on April 22, 2009, Hicks asked to an electrical outlet so he can use the CPAP machine that another inmate uses, and on April 23, 2009, Hicks asked to be allowed to use the CPAP machine due to his "severe sleep apnea" (Doc. 13, Ex. 6). Hicks continued to request installation of an electrical outlet and use of the CPAP machine through September 2009, complaining about his "severe," "life-long" sleep apnea (Doc. 13, Exs. 7, 9-17).

Hicks has not shown that he has a serious medical need for a CPAP machine to treat his sleep apnea. As noted by defendants, Hicks' sleep apnea is clearly *not* severe, and the CPAP machine was only recommended by Dr. Moul-it was not prescribed. Although Dr. Moul did not discuss any other modes of treatment for Hicks, despite his obvious weight problem, Dr. Pacheco prescribed a conservative treatment that is appropriate for treating mild sleep apnea.[2]

This is a case where Hicks disagrees with the prescribed treatment; it is not a case where he has been denied treatment. It is apparent that defendants were not deliberately indifferent to

---

[2] According to the National Institute of Neurological Disorders and Stroke, mild sleep apnea frequently can be overcome through weight loss or by preventing the person from sleeping on his or her back, while other people may need special devices of surgery to correct the obstruction. MEDLINEplus Health Information, Medical Encyclopedia: Brain Basics: Understanding Sleep, *available at* http://www.ninds.nih.gov/disorders/brain_basics/understanding_sleep.htm#sleep_disorders (a service of the U.S. National Library of Medicine and the National Institutes of Health).

7

Hicks' serious medical needs. Since Hicks has not shown that defendants were deliberately indifferent to his serious medical needs, defendants motion for summary judgment should be granted.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Hick's complaint against Dr. Pacheco be dismissed without prejudice under Fed.R.Civ.P. 4(m).

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment be GRANTED and that Hicks' action against defendants be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 28th day of April, 2011.

```
                                    _____
                                    JAMES D. KIRK
                                    UNITED STATES MAGISTRATE JUDGE
```